UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| NUVO RESEARCH INC.,<br>NUVO RESEARCH AG,<br><br>   Plaintiffs,<br><br>   vs.<br><br>DR. MICHAEL S. MCGRATH,<br><br>   Defendant. | Case No:  C 11-4006 SBA<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS** |

Plaintiffs Nuvo Research Inc. and Nuvo Research AG (collectively "Nuvo" or "Plaintiffs") bring the instant action against a former consultant, Dr. Michael S. McGrath ("Defendant" or "Dr. McGrath"), alleging claims for correction of inventorship, breach of contract, unfair competition and unjust enrichment.  The parties are presently before the Court on Defendant's Motion to Dismiss the Second through Fourth Causes of Action of Plaintiffs' Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6).  Dkt. 16. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS IN PART and DENIES IN PART Defendant's motion to dismiss.  The Court, in its discretion, finds this matter suitable for resolution without oral argument.  Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

I. **BACKGROUND**

A. **FACTUAL SUMMARY**

Oxo Chemie AG ("Oxo") and its successor, Nuvo, have been engaged in the development of pharmaceutical products for several decades. Compl. ¶ 10. On September 1, 1996, Oxo and Dr. McGrath, a professor of medicine and pathology at the University of California, San Francisco, entered into a Consulting Agreement, which is governed by Swiss law. Id. ¶ 12. The Consulting Agreement called for Dr. McGrath to assist Oxo in the development of products known as WF10 and TCDO (a chlorite oxygen reaction tetrachlorodecaoxide product). Id. ¶¶ 10, 13. During the consulting relationship, Dr. McGrath was required to assign any inventions to Oxo relating to WF10 or TCDO which resulted from his work for Oxo or was related to the company's business or research. Compl., Ex. A ¶ 12(c). Dr. McGrath was also required to disclose to Oxo any inventions he developed related to WF10 or TCDO during the term of the agreement and twelve months thereafter. Id. ¶ 12(b). The Consulting Agreement set a termination date of August 31, 1999. Id. ¶ 1.

On February 3, 2004, more than four years after the termination of the Consulting Agreement, the University of California filed a provisional application (No. 60/541,576) with the United States Patent and Trademark Office ("PTO") based on Dr. McGrath's work at the University of California. Id. ¶ 19. On January 24, 2005, the related non-provisional patent application (No. 11/042,816) was filed. Id. ¶ 21. That application was published on August 18, 2005 and issued as the '183 patent on September 12, 2006, with The Regents of the University of California as assignee. Compl., Exh. B.

On August 15, 2011, Plaintiffs filed the instant action in this Court. The Complaint alleges four causes of action: (1) correction of inventorship; (2) breach of contract; (3) unfair competition; and (4) unjust enrichment. Compl. ¶¶ 32-55. For its correction of inventorship claim, Plaintiffs allege that Oxo scientists, and not Dr. McGrath, conceived of the '183 patent invention. Id. ¶¶ 26, 28, 33-37. Plaintiffs further allege that Dr. McGrath breached the Consulting Agreement by failing to disclose and assign his invention, i.e., the

1   '183 patent, to Oxo, and by disclosing Oxo's proprietary information.  Id. ¶¶ 43-46.
2   Plaintiffs also claim that Dr. McGrath engaged in unlawful, unfair, and fraudulent business
3   acts and practices by failing to assign the '183 patent, disclosing Oxo's proprietary
4   information and founding a competing entity.  Id. ¶ 50.  Plaintiffs' unjust enrichment claim
5   is based on Dr. McGrath's use and licensing of the '183 patent invention.  Id. ¶ 54.
6       Dr. McGrath now moves to dismiss Nuvo's second through fourth causes of action
7   for breach of contract, unfair competition, and unjust enrichment, respectively.  The motion
8   has been fully briefed and is ripe for adjudication.

9   **II.   LEGAL STANDARD**

10      A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the
11  plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support
12  a cognizable legal theory.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.
13  1990).  In deciding a Rule 12(b)(6) motion, courts generally "consider only allegations
14  contained in the pleadings, exhibits attached to the complaint, and matters properly subject
15  to judicial notice."  Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007).  The court is
16  to "accept all factual allegations in the complaint as true and construe the pleadings in the
17  light most favorable to the nonmoving party."  Outdoor Media Group, Inc. v. City of
18  Beaumont, 506 F.3d 895, 899-900 (9th Cir. 2007).
19      To survive a motion to dismiss for failure to state a claim, the plaintiff must allege
20  "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v.
21  Twombly, 550 U.S. 544, 570 (2007).  The plaintiff must allege facts sufficient to "nudge
22  his claims ... across the line from conceivable to plausible."  Ashcroft v. Iqbal, 129 S.Ct.
23  1937, 1951 (2009) (quoting Twombly, 550 U.S. at 570). "[A] plaintiff's obligation to
24  provide the 'grounds' of his 'entitlement to relief' requires more than labels and
25  conclusions, and a formulaic recitation of the elements of a cause of action will not do."
26  Twombly, 550 U.S. at 555.  Stated another way, the allegations must "give the defendant
27  fair notice of what the … claim is and the grounds upon which it rests."  Id.  In the event
28  dismissal is warranted, it is generally without prejudice, unless it is clear the complaint

cannot be saved by any amendment. See Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir. 2005).

## III. DISCUSSION

### A. BREACH OF CONTRACT

#### 1. Overview

Plaintiffs' second claim for breach of contract alleges that Dr. McGrath breached the Consulting Agreement by:

> 43. … failing to assign to Oxo or Nuvo inventions made during the time Dr. McGrath was being paid by Oxo made while using Oxo's proprietary information or supplies and/or resulting from Dr. McGrath's work for Oxo or relating to Oxo's business and research development efforts.
>
> 44. … disclosing to others, including Neuroaltus, propriety information that Dr. McGrath learned while working with Oxo, and using information outside of the Consulting Agreement."
>
> 45. … failing to disclose to Oxo or Nuvo inventions made during the term of the Consulting Agreement, as well as inventions developed within the twelve month after the termination of his services and using Oxo's proprietary information."
>
> 46. … failing to disclose to Oxo or Nuvo all inventions or innovations, even if he did not believe he was required to assign his interest in such invention or innovation to Oxo or Nuvo under the Consulting Agreement.

Compl. ¶¶ 43-46. The Complaint further alleges that as a result of these alleged breaches, Plaintiffs "have been denied the rights and privileges of ownership of the inventions of the '183 Patent…." Id. ¶ 47.

Dr. McGrath contends that Plaintiffs' claim for breach of contract is time-barred by California's four-year statute of limitations, as set forth in California Code of Civil Procedure § 337(1). Plaintiffs counter that under the choice of law provision contained in the Consulting Agreement, Swiss law controls, and that under Swiss law, breach of contract claims are subject to a ten-year statute of limitations. Thus, the threshold question before the Court is whether California or Swiss law governs the applicable limitations period.

### 2. Choice of Law

A federal court's selection of the proper choice-of-law rules turns on the type of subject-matter jurisdiction that the court is exercising. Patton v. Cox, 276 F.3d 493, 495 (9th Cir. 2002) ("When a federal court sits in diversity, it must look to the forum state's choice of law rules to determine the controlling substantive law."); Chan v. Soc'y Expeditions, Inc., 123 F.3d 1287, 1297 (9th Cir. 1997) ("Federal common law applies to choice-of-law determinations in cases based on federal question jurisdiction ...."). Here, the claims at issue in Defendants' motion are supplemental state law claims; therefore, the Court looks to California's choice of law rules. Paracor Fin., Inc. v. Gen. Elec. Capital Corp., 96 F.3d 1151, 1164 (9th Cir. 1996) ("In a federal question action where the federal court is exercising supplemental jurisdiction over state claims, the federal court applies the choice-of-law rules of the forum state ....").

When parties to a contract bargain for an explicit choice-of-law provision, courts applying California's choice-of-law rules are guided by the California Supreme Court's decision in Nedlloyd Lines B.V. v. Superior Court, 3 Cal.4th 459 (1992). Nedlloyd provides that:

> The proper approach … is for the court first to determine either: (1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law. If neither of these tests is met, that is the end of the inquiry, and the court need not enforce the parties' choice of law. If, however, either test is met, the court must next determine whether the chosen state's law is contrary to a fundamental policy of California. If there is no such conflict, the court shall enforce the parties' choice of law. If, however, there is a fundamental conflict with California law, the court must then determine whether California has a "materially greater interest than the chosen state in the determination of the particular issue...." (Rest., § 187, subd. (2).) If California has a materially greater interest than the chosen state, the choice of law shall not be enforced, for the obvious reason that in such circumstance we will decline to enforce a law contrary to this state's fundamental policy.

Id. at 466 (footnotes omitted, emphasis added); e.g., Ruiz v. Affinity Logistics Corp., 667 F.3d 1318, 1323 (9th Cir. 2012) (holding that district courts applying California law are bound by the analytical framework set forth in Nedlloyd).

**1**   Dr. McGrath does not dispute that Switzerland has a substantial relationship to one
**2** of the Plaintiffs (i.e., Nuvo Research AG) or that there is a reasonable basis for the parties'
**3** choice of law.  Def.'s Reply at 1.  Instead, he contends that application of Swiss law
**4** "would be contrary to California public policy."  Def.'s Mot. at 5.  In particular, Dr.
**5** McGrath asserts that statutes of limitations are designed to protect the state's residents and
**6** courts from stale claims, and that applying Switzerland's ten-year limitations period would
**7** contravene such policy.  Id.  This contention lacks merit.  "Although there is a general
**8** public policy interest in preventing the prosecution of stale claims, that policy is not all-
**9** encompassing."  Hatfield v. Halifax PLC, 564 F.3d 1177, 1183 (9th Cir. 2009).  As such,
**10** "California allows contracting parties to both shorten and extend limitation periods and has
**11** no discernible fundamental policy against the application of other jurisdictions' limitation
**12** periods."  ABF Capital Corp. v. Berglass, 130 Cal.App.4th 825, 835 (2005); Hatfield, 564
**13** F.3d at 1183 (holding that application of a six-year English statute of limitations for
**14** contract disputes did not violate California public policy).  Thus, the Court finds that
**15** application of the Swiss ten-year statute of limitations does not contravene a fundamental
**16** California policy, and that the choice of law clause is enforceable.  See Nedlloyd, 3 Cal.3d
**17** at 466 (stating that if there is no conflict with California public policy, "the court shall
**18** enforce the parties' choice of law.").

**19**   **3.   Timeliness Under Swiss Law**

**20**   Alternatively, Dr. McGrath contends that even if the Swiss ten-year statute of
**21** limitations is applied, Plaintiffs' breach of contract claim is still untimely.  Def.'s Mot. at 7.
**22** Article 127 of the Swiss Code of Obligations provides that a claim for breach of contract
**23** must be brought within ten years after the breach occurs.  Dickenmann Decl. Exs. B, C.
**24** Dr. McGrath contends that under the Consulting Agreement, his obligation to disclose any
**25** inventions only continued for a period of twelve months after the termination of the
**26** agreement—meaning that his disclosure obligations terminated on August 31, 2000.
**27** Consulting Agt. ¶ 12(b), (c)(ii)-(iii).  If correct, the application of a ten-year limitations
**28** period would mean that any claim based on a breach of the Consulting Agreement must

necessarily have been brought by August 31, 2010.  He argues that since Nuvo did not file suit until August 15, 2011, the breach of contract claim is time-barred.

The flaw in Dr. McGrath's argument is that it conflates the separate disclosure and assignment obligations upon Defendant.  Subsection b) sets forth Dr. McGrath's <u>disclosure</u> obligations as follows:

> b)  Consultant agrees to <u>disclose</u> to the Chief Executive Officer and the Board of Directors of the Company any invention or innovation which he develops in relationship to WF-10, either alone or with anyone else, during the term of his consulting any other services to the Company, as well as any invention or innovation based on proprietary information of Company which Consultant develops, whether alone or with anyone else, <u>within twelve (12) months after the termination of Consultant's services to the Company</u>.

Compl. Ex. B § 12 (emphasis added).  Sections c) and d) contain Dr. McGrath's <u>assignment</u> obligations, as follows:

> c)  Consultant agrees to <u>assign</u> any invention or innovation in relationship to WF-10 to the Company:
>
> i) which is developed totally or partially while Consultant is paid by the Company[;]
>
> ii) for which Consultant used any of the Company's equipment, supplies, facilities or proprietary information, even if any or all of such items are relatively minor, and have little or no monetary value; or
>
> iii) which results in any from Consultant's work for the Company or relates in any way to Company's business or Company's current or anticipated research or development.
>
> d)  Consultant understands that and agrees that the existence of any condition set forth in c i), ii) or iii) above is sufficient to require Consultant to assign his invention or innovation to the Company.

<u>Id.</u> (emphasis added)

Under the plain language of § 12 of the Consulting Agreement, it is readily apparent that Defendant's <u>assignment</u> obligations did not terminate twelve months after the termination of Defendant's consulting services.  The twelve-month sunset clause applies specifically to Defendant's <u>disclosure</u> obligations in § 12b.  No similar limitation is set

forth in the subsection addressing Defendant's assignment obligations in § 12c. Had the parties intended to circumscribe Defendant's assignment obligations in the same manner as they did with respect to his disclosure obligation, they could have stated as such in the agreement. See Vons Cos., Inc. v. U.S. Fire Ins. Co., 78 Cal.App.4th 52, 59 (2000) ("We do not have the power to create for the parties a contract that they did not make and cannot insert language that one party now wishes were there.").

In his reply brief, Defendant argues for the first time that interpreting the Consulting Agreement to impose an indefinite obligation to assign any inventions or innovations which resulted from his work as a consultant for Oxo or is based on Oxo's proprietary information or resources is unenforceable under Swiss law on the ground that it impermissibly limits their economic freedom. Def.'s Reply at 4. Because Defendant did not raise this argument in his moving papers (which would have enabled Plaintiffs to respond to it), it is not properly before the Court. See Coleman v. Quaker Oats Co., 232 F.3d 1271, 1289 n.4 (9th Cir. 2000) ("[I]ssues cannot be raised for the first time in a reply brief."). As such, the Court declines to address the issue at this juncture.[1] Accordingly, the Court denies Defendant's motion to dismiss the second cause of action for breach of contract.

### B. UNFAIR COMPETITION

California's Unfair Competition Law ("UCL") makes actionable any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "Through the UCL a plaintiff may obtain restitution and/or injunctive relief against unfair or unlawful practices in order to protect the public and restore to the parties in interest money or property taken by means of unfair competition." In re Tobacco II Cases, 46 Cal.4th 298, 313 (2009). "Each prong of the UCL is a separate and distinct theory of liability." Birdsong v. Apple, Inc., 590 F.3d 955, 959 (9th Cir. 2009). UCL provides for a four-year

---

[1] In light of the above, the Court also does not reach Plaintiffs' contention in their opposition brief that the parties' Amendment to the Consulting Agreement expressly extended the assignment obligation indefinitely.

statute of limitations period.  Cal. Civ.Code § 17208; see also M & F Fishing, Inc. v. Sea-Pac Ins. Managers, Inc., 202 Cal.App.4th 1509, 1530 (2012).

The pleadings allege that, "notwithstanding his obligations under the Consulting Agreement," Dr. McGrath violated the UCL by (1) failing to assign the '183 patent and related patent applications to Plaintiffs, (2) disclosing and/or using Oxo's proprietary information learned while consulting at Oxo and (3) founding a competing entity which is using Plaintiffs' inventions and proprietary information.  Compl. ¶ 50.  There are numerous flaws with Plaintiffs' UCL claim.  First, Plaintiffs fail to identify which prong or prongs of the UCL on which they are attempting to predicate Defendant's liability.  Their failure to do so improperly deprives Dr. McGrath of "fair notice" of the claims alleged against him.  See Iqbal, 129 S.Ct. at 1951; e.g., Qureshi v. Countrywide Home Loans, Inc., No.  09-4198 SBA, 2010 WL 841669, at *7 (N.D. Cal. Mar. 10, 2010) (dismissing UCL claim where plaintiff failed to identify the prong or prongs of the UCL at issue) (Armstrong, J.).

Second, Plaintiffs' UCL claim, insofar as it is premised on Defendant's alleged failure to assign the '183 patent, is not independently actionable because it is predicated solely on rights emanating from the Consulting Agreement.  "[A] breach of contract may form the predicate for a section 17200 claim, provided it also constitutes conduct that is unlawful, or unfair, or fraudulent."  Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137, 1152 (9th Cir. 2008) (internal quotation marks and citation omitted).  But where the plaintiff "has not pled that the breaches of contract are independently unlawful, unfair, or fraudulent," no UCL claim is stated.  Id. (upholding dismissal of UCL claim where plaintiff failed to allege that defendants' conduct in breaching contract to pay publishing royalties was unlawful, unfair, or fraudulent).  Although the Court typically would grant leave to amend to allege facts demonstrating that Dr. McGrath's failure to assign the patent is unlawful, or unfair, or fraudulent, Plaintiffs do not contend and have not otherwise shown in their opposition that such facts exist.  See Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995) (holding that a court may properly deny amendment "where the movant presents no

new facts but only new theories and provides no satisfactory explanation for his failure to fully develop his contentions originally.").

Even if Plaintiffs could allege facts showing that Dr. McGrath's failure to assign the '183 patent is independently actionable under the UCL, such claim is time-barred under the statute's four-year limitations period. The PTO issued the '183 patent on September 12, 2006. See Compl. Ex. B at 1. The issuance of a patent and recordation in the patent office constitute notice to "the world" of a patent's existence. Sontag Chain Stores Co. v. National Nut Co., 310 U.S. 281, 295 (1940). A plaintiff receives constructive notice of its claims when the patent reveals information sufficient to alert a reasonable person of the need to inquire further. See General Bedding Corp. v. Echevarria, 947 F.2d 1395, 1398 (9th Cir. 1991).

In the instant case, the '183 patent explicitly identifies Dr. McGrath as the "Inventor" and the University of California as the "Assignee." Compl. Ex. B. Thus, to the extent that Plaintiffs took exception to Dr. McGrath's failure to assign the '183 patent to them, the disclosure in the '183 patent should have alerted them of the need to inquire further. Plaintiffs ignore this key fact. Instead, Plaintiffs make the conclusory assertion that they "could not have reasonably discovered [Defendant]'s misconduct until well within the four-year statute of limitations." Pls.' Opp'n at 13. "[T]he law is unsettled whether [the statute of limitations period under UCL] may be tolled for delayed discovery." Purdum v. Holmes, 187 Cal.App.4th 916, 924 (2010). But even if tolling were available, Plaintiffs have alleged no facts, either in their Complaint or opposition, demonstrating that the statute of limitations should be tolled in this case. See Guerrero v. Gates, 442 F.3d 697, 706 (9th Cir. 2006).

In sum, the Court finds that Plaintiffs have failed to allege a "plausible" claim under the UCL. Plaintiffs are granted leave to amend their UCL claim to the extent it is based on Dr. McGrath's alleged disclosure and/or use of Oxo's proprietary information and founding of a competing entity which is using Plaintiffs' inventions and proprietary information.

Plaintiffs' UCL claim based on allegations that Dr. McGrath failed to assign the '183 patent is dismissed with prejudice.

### C. UNJUST ENRICHMENT

Plaintiffs' fourth claim alleges a claim for unjust enrichment. This Court has previously concluded that there is no independent claim for unjust enrichment. Newsom v. Countrywide Home Loans, Inc., 714 F. Supp. 2d 1000, 1009-1010 (N.D. Cal. 2010). In addition, unjust enrichment is synonymous with restitution, id., which is an available remedy under the UCL, Pfizer Inc. v. Super. Ct., 182 Cal. App. 4th 622, 631 (2010); Colgan v. Leatherman Tool Group, Inc., 135 Cal. App. 4th 663, 694 (2006). Accordingly, Plaintiffs' claim for unjust enrichment—to the extent such a claim exists—is superfluous. See In re Apple and AT & T iPad Unlimited Data Plan Litig., -- F. Supp. 2d --, 2011 WL 2847418, at *6 (N.D. Cal. July 18, 2011) ("plaintiffs cannot assert unjust enrichment claims that are merely duplicative of statutory or tort claims.") (citing cases). The Court therefore dismisses Plaintiffs' unjust enrichment claim with prejudice.

### IV. CONCLUSION

For the reasons set forth above,

IT IS HEREBY ORDERED THAT:

1. Defendant's motion to dismiss is GRANTED IN PART and DENIED IN PART.

   a. The motion is DENIED as to Plaintiffs' second claim for breach of contract.

   b. The motion is GRANTED as to Plaintiffs' third claim under the UCL. Plaintiffs are granted leave to amend their UCL claim to the extent it is based on Defendant's alleged disclosure and/or use of Oxo's proprietary information and founding of a competing entity which is using Plaintiffs' inventions and proprietary information. Plaintiffs' UCL claim based on allegations that Defendant failed to assign the '183 patent is dismissed with prejudice.

        c.        The motion is GRANTED as to Plaintiffs' fourth claim for unjust enrichment, which is dismissed with prejudice.

        d.        Plaintiffs shall have fourteen (14) days from the date this Order is filed to file a First Amended Complaint, consistent with the Court's rulings. Plaintiffs are advised that any additional factual allegations set forth in their amended complaint must be made in good faith and consistent with Rule 11 of the Federal Rules of Civil Procedure. The failure to timely amend will result in the dismissal of the dismissed claims, with prejudice.

2. The Case Management Conference currently scheduled for April 24, 2012 is CONTINUED to June 6, 2012 at 3:15 p.m. Prior to the date scheduled for the conference, the parties shall meet and confer and prepare a joint Case Management Conference Statement which complies with the Standing Order for All Judges of the Northern District of California and the Standing Orders of this Court. Plaintiffs shall assume responsibility for filing the joint statement no less than seven (7) days prior to the conference date. Plaintiffs' counsel is to set up the conference call with all the parties on the line and call chambers at (510) 637-3559. NO PARTY SHALL CONTACT CHAMBERS DIRECTLY WITHOUT PRIOR AUTHORIZATION OF THE COURT.

3. This Order terminates Docket 16 and 30.

IT IS SO ORDERED.

Dated: May 25, 2012

_Saundra B Armstrong_
SAUNDRA BROWN ARMSTRONG
United States District Judge